# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ALTAMESE THOMPSON BRYANT,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:14-cv-534-Orl-37DAB**

**CAROLYN W. COLVIN,**
**Acting Commissioner of**
**Social Security,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for a period of disability, disability insurance benefits, disabled widow's benefits, and for Supplemental Security Income. For the reasons set forth herein, it is **respectfully recommended** that the decision of the Commissioner be **REVERSED** and the matter be **REMANDED** for additional proceedings**.**

## Procedural History

*The first round*

According to the record, on September 9, 2009, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, a Title II application for disabled widow's benefits, and, on March 10, 2010, protectively filed a Title XVI application for supplemental security income (R. 89). In the Title II applications, the claimant alleged disability beginning January 14, 2009; in the Title XVI application, the claimant alleged disability beginning May 20, 2008. These claims were denied initially and upon reconsideration, and the claimant appeared and testified at a hearing before Administrative Law Judge John D. Thompson, Jr. ("the ALJ") (R. 89). The ALJ issued an

unfavorable decision on July 22, 2011 (R. 89-99), and, according to the ALJ, that decision was "affirmed on appeal" (R. 38).[1]

*The current round*

Following the denial, Plaintiff again filed applications for a period of disability, disability insurance benefits, disabled widow's benefits, and for Supplemental Security Income (R. 105, 116, 270-282), alleging an onset date later amended to July 23, 2011 (the day after the first unfavorable decision) (R. 17). Her claims were again denied administratively, and Plaintiff received a hearing before the same ALJ who denied her first applications (R. 35-83). Shortly after this hearing, the ALJ issued another unfavorable decision (R. 17-29). The Appeals Council denied Plaintiff's request for review (R. 1-3), making the ALJ's May 20, 2013 decision the final decision of the Commissioner.

Plaintiff timely filed her complaint in federal court, and the case has been referred to the undersigned United States Magistrate Judge. The matter has been briefed and is now ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## Nature of Claimed Disability

Plaintiff claims disability due to nerve damage in her legs and hands, arthritis in her back, depression, glaucoma, high blood pressure (R. 105, 321), and knee pain (R. 63, 66).

*Summary of Evidence Before the ALJ*

Plaintiff was fifty-seven years old at the time the ALJ issued the decision (R. 29, 270), with a ninth or eleventh grade education (R. 54, 322),[2] and prior relevant work experience as a cleaner, mail clerk and data machine feeder (R. 80, 321-322).

The medical evidence relating to the pertinent time period is detailed in the ALJ's opinion. In the interest of privacy and brevity, it will not be repeated here, except as necessary to address

---

[1] The record does not include evidence of any affirmance, but neither side disputes this contention.

[2] The record is conflicting, but Plaintiff testified that she completed ninth grade and did not obtain a GED.

Plaintiff's objections. In addition to the medical records of the treating providers, the record includes the testimony of Plaintiff, a Medical Expert ("the ME"), and a Vocational Expert ("the VE"); written forms and reports completed by Plaintiff; and opinions from state agency consultants. By way of summary, the ALJ determined that Plaintiff had the following severe impairments: a history of degenerative arthritis of the left knee; history of degenerative disc disease; history of hypertension; history of obesity and a history of tobacco abuse (20 CFR 404.1520(c) and 416.920(c)) (R. 19); and the record supports this finding. The ALJ found that the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 21). The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b ) and 416.967(b) except the claimant is able to sit, stand and walk each for six hours in an eight-hour day with customary breaks. Further, the claimant is capable of lifting/carrying 20 pounds occasionally and 10 pounds or less more frequently. Within these weight limitations, the claimant is capable of operating arm, hand and foot/pedal controls on an occasional to frequent basis and she has no limitation of function in her ability to reach in all directions, handle, finger and feel. Furthermore, the claimant is limited to only occasional climbing of stairs and ramps, but she should avoid climbing of ladders, ropes and scaffolds. The claimant can occasionally balance, stoop and crouch, but should avoid kneeling and crawling. The claimant has no limitation in her ability to see, speak or hear and she should avoid work at unprotected heights or working in close proximity to dangerous moving machinery.

(R. 22).

The ALJ determined that Plaintiff could return to her past relevant work (R. 28), and therefore, the ALJ found Plaintiff was not disabled (R. 29).

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C.

§ 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff raises three issues for review, contending that: 1) the ALJ failed to apply the correct legal standards to the opinion of the consultative examiner; and 2) the ALJ failed to apply the correct legal standards when he did not provide "explicit and adequate" reasons for rejecting Plaintiff's testimony; and 3) the ALJ failed to apply the correct legal standards when he failed to include all of Plaintiff's limitations in the RFC assessment and made findings not supported by substantial evidence. The Court examines these issues in the context of the sequential assessment used by the ALJ.

*The five step assessment*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not

-4-

have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Applied here, as the applications were decided at step four, Plaintiff had the burden at all relevant times.

*Weighing the Evidence*

Plaintiff first contends that the ALJ improperly evaluated the opinion of the consultative medical examiner, David W. Carpenter, M.D. (R. 420-425). Plaintiff presented for a consultative examination with Dr. Carpenter on September 21, 2011, at the request of the agency (R. 420-426). In his determination, the ALJ summarized his interpretation of the examination findings (R. 26), noting:

> The claimant reports a two-year history of worsening pain and stiffness affecting her low back, hips and knees. The claimant stated that her symptoms began after she was involved in a slip-and-fall accident at a retail outlet in 2009. The claimant reported having a surgical history with regard to her left knee, but she stated the present symptoms are unrelated to the prior trauma to the left knee that resulted in that earlier surgery. The claimant conveyed that prolonged standing and ambulation exacerbated her symptoms. The claimant acknowledged that she was capable of performing activities of daily living without assistance. Dr. Carpenter documented that the claimant's left extremity was injured due to the claimant jumping from a three story building in the early 1980's and that her past medical history included nerve damage in legs and hands, arthritis in her spine, glaucoma, hypertension and depression. Further, Dr. Carpenter noted that the claimant smoked almost two packs of cigarettes per week and had done so for fifteen years. The claimant's blood pressure was 100/58, her weight was 192 pounds and her height was five feet and three inches (Exhibit B3F).

> Additionally, the claimant's back revealed only normal findings and some mild tenderness in the upper lumbar paravertebral musculature bilaterally. In addition, the claimant exhibited a full range of motion throughout her entire body, no motor or sensory deficits were noted, no joint deformities, no evidence of joint inflammation, full strength throughout her entire body and intact fine manipulation skills. X-rays of the claimant revealed that her left knee was status post partial patellectomy with significant degenerative changes in the patellofemoral compartment and only moderate degenerative changes are present in the medial compartment as well. Additionally, the x-rays of her spine showed significant degenerative disc disease at L5-Sl with only mild anterior spondylolisthesis of L4 and L5 and vertebral bodies and disc spacing are otherwise adequate throughout. Even with her conditions, she exhibited the ability to get on and off the examination room table without difficulty or assistance. *Dr. Carpenter's impression of the examination was that the claimant experiences lower back pain and pain and instability issues affecting her hips and knees. He opined the claimant appears limited in her ability to perform work-related activities involving prolonged standing, ambulation, lifting and carrying (Exhibit B3F).*

(R. 26 emphasis added).

Following this summary, the ALJ evaluated the opinion, as follows:

The undersigned has considered the opinion of Dr. Carpenter in accordance with the Regulations. In this case, no treating physician has offered an opinion sufficient upon which to assess the claimant's residual functional capacity. However, the undersigned notes that Dr. Carpenter's opinion is partially consistent with records and reports obtained from the claimant's treating physicians and with the evidence as a whole. Therefore, pursuant to the regulations, the undersigned accords some weight to the opinion of Dr. Carpenter as an examining physician and restricts the claimant to light work, with only occasional climbing of stairs and ramps; no climbing of ladders, ropes and scaffolds; only occasional balancing, stooping and crouching; and no kneeling and crawling.

(R. 26).

Plaintiff contends that this analysis is not supported in that the ALJ gave "some" weight to Dr. Carpenter's opinion but the ALJ's finding that Plaintiff has the RFC for light work conflicts with Dr. Carpenter's opinion of limitations in Plaintiff's abilities to perform work-related activities involving prolonged standing, ambulation, lifting and carrying, and the ALJ's findings do not address the discrepancy. Upon review, the Court agrees that error is present.

Initially, the Court observes that the ALJ's summary of Dr. Carpenter's examination findings is not accurate. Although the ALJ stated: "The claimant acknowledged that she was capable of

performing activities of daily living without assistance," the examination notes state: "The claimant is capable of performing activities of daily living without assistance but feels that activities of daily living are difficult on occasion when her symptoms are particularly severe." (R. 420). While the ALJ said: "Even with her conditions, she exhibited the ability to get on and off the examination room table without difficulty or assistance;" Dr. Carpenter actually noted: "She gets on and off the exam table without difficulty or assistance but does so slowly and with some difficulty." (R. 421).[3] Too, the ALJ's finding that: "the claimant's back revealed only normal findings and some mild tenderness in the upper lumbar paravertebral musculature bilaterally," conflicts with the abnormal finding of positive straight leg raising bilaterally in a seated position, producing discomfort in the lower back (R. 421), which the ALJ did not note. While the Court is aware that there is "no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005), when the ALJ does purport to rely on specific evidence, he should characterize it accurately.

As for Plaintiff's specific objection, the ALJ did not adequately explain the weight given to Dr. Carpenter's ultimate finding of limitations in the ability to perform work related functions, as required. The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).) Substantial weight must be given to the

---

[3]The internal contradiction is not lost on the Court. Nonetheless, the ALJ's finding that Plaintiff had no difficulty is inaccurate.

opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997)*; Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d).  By contrast, a consultant's findings are not entitled to special weight or the deference given to a treating provider. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *see also Anderson v. Commissioner of Soc. Sec.*, 441 Fed. Appx. 652, 653 (11th Cir. 2011) (per curiam).

Applied here, the ALJ gave "some" weight to the opinion, as being "partially consistent" with other records, but the RFC adopted by the ALJ conflicts with the ultimate conclusion of Dr. Carpenter,[4] and the ALJ does not adequately explain (and support) his implicit choice to discredit this conclusion.  While the Court normally gives a wide berth to the Commissioner's discretion in weighing evidence and Dr. Carpenter is not a treating physician, where, as here, "no treating physician has offered an opinion sufficient upon which to assess the claimant's residual functional capacity" (R. 26),[5] and the evidence relied upon by the consultative examiner includes objective X-ray evidence of significant degenerative disease, the ALJ's discounting of the only opinion based on an examination must comply with *Winschel's* mandate of "particularity."  The need for such findings justifies remand.

*Credibility*

Plaintiff next contends that the ALJ's credibility determination was not made in accordance with appropriate standards and is unsupportable.

---

[4] Light work, as defined in the regulations, involves lifting no more than 20 pounds at a time with "frequent" lifting or carrying of objects weighing up to 10 pounds.  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §404.1567(b).

[5] In addition to Dr. Carpenter, Dr. Ghazi, a board certified orthopedist, reviewed all of the records and testified as a non-examining Medical Expert, that, in his opinion, Plaintiff's degenerative joint disease was significant enough to met the listings requirement for disability (R. 37-53).  The ALJ disagreed with the ME during the hearing, and ultimately gave Dr. Ghazi's findings "little weight" in his determination, as being "not impressive nor consistent with the totality of the credible medical evidence." (R. 27).

When a claimant attempts to establish disability through subjective symptoms, the Eleventh Circuit follows a three-part test that requires: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged [symptom] arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged [symptom]." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that he has an impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c), (d), 416.929(c), (d); *Mack v. Commissioner of Social Security,* 420 Fed.Appx. 881, 883 (11th Cir. 2011).

After considering a claimant's subjective complaints, the ALJ may reject them as not credible. Where an ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote,* 67 F.3d at 1562.

Here, the ALJ stated that "that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision" (R. 23). The Commissioner cites several observations made by the ALJ as the basis for the credibility finding. As several of those observations are

inaccurate, however, and the conclusions drawn are without logical support, the Court cannot recommend affirmance.

Although not specifically identified as a credibility finding, the ALJ did note several examinations where Plaintiff generally denied any gait or ambulation issues and her muscle strength and tone in her lower extremities were found to be normal (R. 23-25). This finding is supported. However, the ALJ also included other reasons in assertions which do not accurately reflect the record:

- The ALJ claimed Plaintiff testified "that she only seeks continuing medical care for her blood pressure from Halifax Health Center" (R. 23). The Commissioner argues that this contrasts with Plaintiff's allegations of consistent knee and back pain (Brief, p. 9).

To the extent the Commissioner is interpreting the ALJ's characterization of Plaintiff's testimony as a finding that Plaintiff is only being treated by this Clinic for her hypertension, this is not accurate. Plaintiff testified that she goes to the community clinic where she is treated for her high blood pressure *and her orthopedic issues.* (R. 62-64, 67, 76-77) ("I tell her about my knee and stuff;" "she gives me a shot for pain;" "I go and get the shots from her;" I don't have the money to go nowhere else. The only thing–shots;" complained to Dr. McNish about "back problems" and "she gives me a shot.") Plaintiff's testimony is not inconsistent with her allegations of knee and back pain.

- The ALJ found that "it [is] interesting that the claimant's treating physicians regularly do not mention nor do they make record of any issues with the claimant's knees or back (Exhibit B2F)." (R. 24).

An examination of the Exhibit cited by the ALJ belies this conclusion. *See* B2F docs. R. 392 (low back pain), R. 399 (bilateral hip pain, sciatica), R. 400 (back pain 9/10), R. 401, 403 (chronic LBP), R. 406 (pain in low back); and R. 410-411 (LBP- lower back pain and hand and feet pain). The ALJ's finding that "she is not on any prescribed pain medication" (R. 27) is similarly inconsistent

with Plaintiff's testimony (supported by the treatment records) as to the injections of medication she regularly receives for her orthopedic pain issues.[6]

- The ALJ makes much of Plaintiff's tobacco addiction, observing: "It appears that the claimant was unable to afford her medication, although she was somehow able to afford her expensive chronic tobacco smoking habit" (R. 24); "The undersigned takes note that the claimant's non-compliance with her physician's recommended treatment indicates that the claimant is not serious about her health or that her symptoms do not rise to a level as to motivate the claimant to follow up with suggested treatment and lifestyle changes. Further, the undersigned notes that it appears that the claimant was unable to afford her medications again, although she was able to afford to sustain her expensive and chronic smoking habit" (R. 25); "The undersigned notes that the claimant's pain symptoms must not be as severe as she alleges or she would find a way to afford such pain medications as she does for her chronic smoking habit."(R. 25).

The finding that Plaintiff must not be in pain, or she would buy medicine and not cigarettes, is both factually (and medically) unsupported. It is common knowledge that smoking is a powerful addiction. The implicit assumption that Plaintiff, who is homeless and without any financial resources, could simply stop smoking after over forty years of addiction,[7] is not supported by any record evidence. More importantly, there is no evidence that Plaintiff *buys* her cigarettes. Indeed, when asked about it at hearing, she testified that she gets them from other people (R. 65).[8] To the extent the ALJ appears to use Plaintiff's non-compliance with treatment as evidence that Plaintiff is not disabled or she would "find a way to afford" pain medications, it is well established that "poverty excuses noncompliance." *Dawkins v. Bowen,* 848 F. 2d 1211, 1213 (11th Cir. 1988).

- The ALJ noted Plaintiff's "sporadic" work history, described as a "pattern of low and inconsistent earnings," and found that her earnings record "detracts

---

[6]The record reflects numerous notations regarding Plaintiff's reported inability to afford prescription medications.

[7]Plaintiff has been a smoker since the eighth grade (R. 25).

[8]To be clear, the undersigned does not find that an ALJ can never consider lifestyle issues such as smoking in evaluating a claim for disability benefits. Indeed, such a factor may well be considered in an appropriate context. Here, however, the ALJ does not point to the impact of Plaintiff's smoking on her health (and, indeed, no respiratory difficulties are alleged) but rather surmises, without any supporting evidence, that Plaintiff's smoking *must* have an adverse impact on her finances. The ALJ then makes an additional leap to conclude that Plaintiff must not be in pain or she would "find a way to afford" pain medications as she does for her cigarettes. This conclusion is not supported on this record.

-11-

>from her credibility" in that "a lack of a consistent work history may indicate a lack of motivation to work rather than a lack of ability" (R. 28).

While the ALJ is entitled to consider a claimant's work history and a sporadic history may reflect unfavorably on a claimant, a lack of consistent earnings does not *always* warrant an inference of malingering; especially where, as here, a Plaintiff has limited education and unstable life circumstances.[9] Without more, an adverse credibility determination cannot rest on this thin a reed.

In sum, while the record may contain evidence sufficient to support an adverse finding, the *articulated* reasons offered by the ALJ are not supported by evidence sufficient to confirm the credibility finding. Remand for reconsideration is warranted.

*Additional Impairments*

Plaintiff's last objection is that the ALJ did not properly consider or explain how he accounted for Plaintiff's hypertension, obesity, hand impairments, vision impairments, or need for a cane in developing the RFC.

A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Commissioner of Social Sec.,* 265 F.3d 1214, 1219 (11th Cir. 2001). A mere diagnosis, however, is insufficient to establish that an impairment is severe. *See Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002). "The severity of a medically ascertained impairment must be measured in terms of its effect upon [a claimant's] ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *Id., citing McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). A claimant has the burden of proof to provide substantial evidence establishing that a physical or mental impairment has more than a minimal effect on a claimant's ability to perform basic work activities.

---

[9]Plaintiff testified that her husband passed away and she moved to Daytona to take care of her 94 year old mother (R. 59). She stayed with her sister for a while, and then moved from place to place, "living here and there, maybe the streets, with a friend one night, never know where I'm going to stay the next night." (R. 62). In her reports, she noted that she stopped working in 2008, because "I feel [sic] and hurt myself, I was out too long and was unable to go back." (R. 321).

At step two, the ALJ found Plaintiff's history of hypertension and obesity to be "severe" impairments (R. 19), and referred to same in various places in the opinion. Plaintiff has not shown how these conditions imposed functional limitations beyond those recognized in the RFC. Also, to the extent "need to use a cane" is an impairment, the ALJ discussed the use of a cane in the context of his discussion of Plaintiff's orthopedic impairments. While the ALJ did not find Plaintiff's alleged hand and vision limitations to be severe at step two, this is only reversible error if the ALJ did not consider all of the functional limitations shown to be arising from these impairments in the subsequent steps of the analysis. *See Packer v. Commissioner of Social Security,* 542 Fed. Appx. 890 (11th Cir. 2013) ("We have explained that the finding of any severe impairment, whether or not it qualifies as a disability, is enough to satisfy the requirement of step two of the sequential evaluation process," *citing Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987).) There is no showing that these impairments caused functional limitations greater than those found by the ALJ.

As a practical matter, although no error is shown as to this objection, as the undersigned recommends reversal of the decision and further consideration of the record, if the recommendation is adopted, the ALJ will necessarily consider all of the impairments anew.

A final note is in order. The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505- 404.1511. The only issue before the Court is whether the decision by the Commissioner that Plaintiff did not meet this standard is adequately supported by the evidence and was made in accordance with proper legal standards. Because the ALJ's ultimate determination that Plaintiff was not disabled is

based, in part, on an inaccurate reading of the record and on unsupported assumptions, the Court finds that the determination is not adequately supported by substantial evidence and was not made in accordance with appropriate standards. As such, it is **respectfully recommended** that the administrative decision be **reversed** and the matter be **remanded** for further administrative proceedings. Should this recommendation be adopted, the ALJ should reconsider all of the evidence in this matter in accordance with appropriate standards.

## Conclusion

For the reasons set forth above, it is **respectfully recommended** that the administrative decision be **REVERSED and the matter be REMANDED under sentence four of 42 U.S.C. § 405(g)**, **for additional consideration of the opinion and other evidence**. If this recommendation is adopted, the Clerk should be directed to enter judgment accordingly, terminate all pending matters, and close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on April 10 , 2015.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy